We'll move to the next case of the day, which is Chaitoff v. Experian Information Solutions, Appeal No. 21-2632, and we'll hear first from Mr. Zemel. May it please the Court, Daniel Zemel on behalf of Mr. Chaitoff. There are three key questions to be considered on appeal. Whether Experian's failure to credit report information concerning the trial period plan, the TPP, and payments thereunder require a legal determination. The second, whether Experian was required to notate Mr. Chaitoff's dispute. And the third, whether Experian's reliance on the ACDV exchange alone on these facts can be considered reasonable as a matter of law. I'd like to begin with the failure to notate Mr. Chaitoff's dispute. A failure to notate disputes subject to 1681 IC has four elements. The consumer disputed an item in his file. The reinvestigation conducted by the credit reporting agency did not resolve the dispute. The plaintiff filed a subsequent statement of dispute, and the statement was not included in subsequent credit reports. So this is from the July letter, July 2018 going forward? That's correct. That's correct, Your Honor. So we meet all four elements. The May was the first dispute. That dispute wasn't resolved. The July was the second dispute. And thereafter, Experian did not notate a dispute. Here, Experian's arguments are that Mr. Chaitoff didn't put Experian on notice of his subsequent dispute, but that's inaccurate. The letter clearly says, the July letter clearly says, we disagree with the prior results of my prior dispute letter, which is the May correspondence. So Mr. Chaitoff meets the elements of that claim. The statute says that whenever a statement of dispute is filed, which is odd wording. They don't say notify. It says filed. What does that mean? There is no definition in the statute for that, Your Honor. Because in other portions, they refer to notify or something more precise. Filed sounds like something more formal. I would agree. That's what it sounds like. But there's no indication that consumers are required to do anything more. And the case law addressing this claim specifically. Do anything more than what? More than submitting a dispute to the credit agency in the regular format. A letter that a human being would recognize as a dispute? Yes. And the only circuit decision on the issue is the Cortez case from the Third Circuit, which just says a subsequent dispute is sufficient. A subsequent dispute by mail is sufficient to meet the element. There's very little case law out there about this particular provision. Yes. Is this an issue that the district court should address in the first instance? I really didn't see much in the district court's opinion on that question. If we vacate the district court's opinion, should we send this back to the district court and ask the district court to try again on this particular issue? Yes, Your Honor. That's why we moved for reconsideration. We did not feel it was addressed at all. And I would agree with that. The July letter starts, This is my third and final letter before proceeding with litigation. The purpose of this letter is to dispute my ACWA account, etc. Does more need to be said? Under the Third Circuit Cortez case, no more needs to be said. But in this case, the plaintiff actually did go further, and he said, I have already disputed this with you, and despite this, you failed to correct my report. That's putting sufficient notice as it relates to the 1681 IC claim. So I think the question is, does it need to go back to the district court to make a determination in the first instance, or is that something we can resolve and send it back for discovery? Discovery is concluded. The evidence establishes the claim already. I don't think discovery is necessary. So nothing else needs to be done on discovery? Correct. Turning to the second question that I'd like to address, whether the ACDB exchange alone is sufficient here, under Henson, there are two elements. The first is whether Experian had information that often may be an unreliable source of information. And the second, the cost-benefit analysis. What is the cost of conducting a further investigation versus potential harm to the consumer? But you agree that if the report itself is accurate, we don't need to get to this issue? Yes, Your Honor. If the credit report involves a legal issue to make a determination as to its accuracy as the district court found, do you agree that we don't need to get to this reasonableness of the ACDB issue? With the exception of the 1681 IC claim, the notation of dispute, yes, I agree with Your Honor. But that doesn't involve the reasonableness of sending the ACDB. Would that implicate the 1681 IC claim, or does that only implicate your EB and other claim? It only implicates the other claim, yes. Right. So I didn't think that the ACDB and the reasonableness of that had any implication for the state failure to include the statement of dispute on the credit report. I agree. Those are two separate claims, although the failure to mark that, to notate that dispute as required by 1681 C results in an inaccuracy, the omission of a statement that should be there. So with regard to the two elements, whether Experian was put on notice, that Ackman may be an unreliable source, there's ample evidence to support that. First, within Mr. Chadov's dispute letters, he clearly says there is reason to believe the reporting is inaccurate. The reporting by Ackman is erroneous. And further, at the same time, Mr. Chadov submitted letters on Ackman letterhead which showed the existence of the TPP. It showed payments thereunder. During this period of time, Ackman is reporting to Experian that there was no TPP made and no payments were made thereunder. So Experian had reason to believe or reason to suspect Ackman may not be a reliable source. Frankly, what more must a consumer show to prove a furniture is unreliable other than providing documents on furniture letterhead that contradict what the furniture is providing to Experian? Turning to the second element, the cost-benefit analysis, all Mr. Chadov wants in this case is for Experian to have reviewed the document stating there is a TPP and to make a determination. At worst, Experian should have called Ackman one call, one email, or called plaintiff and said, was there a TPP? That would have been it. I'm just imagining a consumer trying to go through the phone menus to try to reach somebody. Is there a relationship between credit reporting agencies and furnishers that lets somebody reach the right person quickly? Yes, Your Honor. There is a direct relationship. They correspond to each other via email. Often furnishers have questions on how to report. There is a direct email at each credit agency to answer these questions in that way. A quick email would have resolved it in this case. Why would just the existence of the TPP make a difference? The existence is important. First, the Pittman court went through that. The Sixth Circuit articulated it. But Pittman was different. Pittman didn't involve a credit reporting agency. It involved a mortgage service company, and the obligations are very different under the statute. That's correct. So I don't think Pittman helps you. Okay. Well, the difference is, right now, Mr. Chadoff's credit report appears no different as if he didn't make any payments or reach any agreement with the creditor whatsoever. And in this particular case, that presented an issue with Mr. Chadoff's own creditor. The creditor interpreted the report to show nonpayment during May, June, and July of 2017. So there is a significance to saying, to his perspective and actual creditor, he was making payments in accordance with an agreement reached. But it's true. Those payments didn't go to cover those particular months. They went to cover back payments, which gets into the legal question of the implications of the TPP. Too many acronyms here. The payments demonstrate Mr. Chadoff is not as financially irresponsible as someone who did not make payments at all. He is in a better position. He reached an agreement with his creditor. He said he can't do it, and then he paid in accordance with that agreement. Those two consumers can't appear the same under the statute, which requires not simply accuracy, maximum possible accuracy. And with respect to Pittman, I find it's helpful here to think about the difference between – we have different investigative obligations for furnishers of information and for reporting agencies, right? That's correct. But I haven't seen any court distinguish with respect to TPPs and timely payments under them as to whether that's accurate or not. Accuracy is a separate question from responsibility to investigate and correct. That's correct. That's what I stated in my briefing. And Loesch and Judge Dow and Maleva's opinion in the Sixth Circuit and Pittman all basically said there's a huge difference here in terms of accuracy. We'll sort out later whose job it was to sort it, to figure out what – to get it straightened out. That's correct. And, again, Mr. Chadoff can't appear as though he never made any payments or reached any agreement with his creditor. That's a significantly different position. Okay. Let me ask, in your view, why is it not reasonable to have the automated response, this ACVD used, at least for the first letter that he sends in May? Even for the first letter, with the letter, there is documentary support for what he's saying. He's showing on OQIN letterhead that there is an agreement reached, and that information is directly conflicting what OQIN is providing to Experian. So at that point, when Experian gets the letter and the documents, not the letter alone, Experian has conflicting information. It's got to recognize that and do something more. Conflicting information from OQIN itself. That's correct. Okay. And then – it's unclear to me exactly what happened, but I guess one computer talked to another computer and didn't straighten this out. He sends the July letter and doesn't get any meaningful relief there. Are there grounds for treating that treatment as willful? Yes, Your Honor. There is ample case law in different ways to establish willfulness. First is repeated failure to respond appropriately to an investigation. The second is just a general policy failure. In this case, we identified a policy failure of Experian, which is Experian has no policy whatsoever for reporting a TPP on their credit report. These facts are not facts that can be decided as a matter of law, but a jury should determine whether that's willful. Turning to the last question, Your Honor. Is there an issue effect on willfulness, though, if the ACDV procedure has been blessed by courts? And the fact that they did something as opposed – something that's been blessed by the courts in order to try to determine the accuracy of the information. How can that be willful or raise an issue effect? The ACDV has been blessed by courts where there are no additional circumstances to doubt what the furnisher is providing. The Seventh Circuit articulates, though – Certainly on the sufficiency of the ACDV, I agree. But on the fact that they are attempting or doing something, how can that amount to willful conduct? There is ample circuit law that says you can't rely only on the ACDV when sufficient information about the disputes provided. The Loesch case goes into it in detail. That goes to the reasonableness question, though, not the willfulness, right? The Loesch goes to both, Your Honor. I think willfulness was a remaining question for both under Loesch. And all the circuits – Cortez, Cushman, and Third Circuit – they find that it's always a question of fact for the jury. And where a credit reporting agency has put on notice that the ACDV may not be sufficient because, in this case, the information it is receiving from Ackman through the ACDV process is contradicting the information Mr. Chadoff is getting from Ackman, which there is no dispute these letters came from Ackman, that presents a triable question of fact on the issue of willfulness. Is there any obligation that the reinvestigation has to have made a difference? Is there any – in other words, is there any obligation to establish that if they had done more than just send this ACDV, that it would have made any difference in what Experian reported? You're asking if, in discovery below, we came to reach that conclusion? Or if that's something legally you have to establish. So if they had done something more, if they had picked up the phone and called and ended up not changing anything, getting the same information, do you have to prove something like that? No, Your Honor. At that point, it may be an appropriate question of law such that it would not need to go to the jury on the issue of willfulness, whether the investigation was sufficiently reasonable. But here they did not do that. And therefore, the question of whether that should have been done is a jury question. The final question with regard to is that the legal determination. In Chalumba, the circuit said the legal determination is where law must be applied to the facts. The examples of legal determination are where the consumer is attempting to collaterally attack the debt or the assignment of the debt for legal reasons. Mr. Chadoff isn't attacking the debt here. Neither Experian, Ackman, nor Mr. Chadoff dispute that there is a TPP entered into. Therefore, there's no legal question. It's simply the existence of this TPP, which is that issue. It's applying facts to the facts. And the payments. And the payments. The fact that they were made. Right. That's correct. And in Chalumba, we specifically talk about whether the payments were made is a fact question that doesn't require a legal determination. All right. Your time has expired. Is there anything else? No. Thank you, Your Honor. You may have a minute or two for rebuttal, but we'll see. All right. We'll next hear from Mr. Hall for Experian. Thank you, Your Honors. And good morning. May it please the court. My name is Christopher Hall for Experian in this case. There are just a few points that I would like to make this morning that I do think show that this case is well within the confines of well-established precedent in this circuit. But before I hit the points I had planned to make, I did want to address, Your Honor, Judge St. Eve's question about what does a statement of dispute mean? Because the statute does say a little bit more than just any further communication to indicate there's still a dispute. The statute says that the Consumer Reporting Agency, and this is 1681ib, may limit such statements to not more than 100 words if it provides the consumer with assistance in writing a clear summary of that dispute. When you look at the dispute results Experian sends to Mr. Chadoff in this case, they say one of your options, this is in the first results, one of your options if you don't agree is to file a statement of dispute up to 100 words. Experian avails itself of the statutory option of limiting the statement to 100 words, which it will assist with to make sure it's clear, but it's not just any further communication indicating that there's still a dispute about the account. So why wouldn't the July letter from Mr. Chadoff here have raised an issue of fact about whether or not that was a statement of dispute? Because nowhere in that letter does he say, please add this to my report, this is my statement, here are the 100 words. Does he have to do that under the law? I think that the law is clear, that he needs to say something about what the statement should be, not leave it to the CRAs to guess or just indicate the statement, this account is still disputed. I wouldn't know. Why wouldn't his explanation of what he thought the dispute was be sufficient? He certainly doesn't have to write the words or include statement of dispute in his letter. I don't think you're saying that. No, I don't think he needs to use some magic words to trigger the obligation, but I do think he needs to indicate that he would like the fact that he is still disputing it added to his report. The statute envisions a consumer communicating, I'm not happy with this, please indicate this on my reports going forward. The statute allows the CRAs to limit it to 100 words if they help. And the district court found that Mr. Chadoff had provided zero factual support for this assertion. I come back to the question I asked, why wouldn't the July letter be sufficient given the language in there, his clear dispute of this, be sufficient to at least raise an issue of fact under that provision? Because I think the reading of 1681 IB envisions more specific than just here's another letter that's more or less verbatim to my previous letter with the same documents. How many times does he have to bang his head against the wall here? To add a statement of dispute? To get some relief. I think it would depend on the nature of the dispute. Here, I think the question about reasonableness and accuracy factors in. Consumers frequently, repeatedly dispute accurate information. Of course, but he's provided, this is not a routine dispute letter. He's provided the information from Aquin about his timely payments in the TPP. He's provided the TPP notification itself. The contract, what the notification Aquin sends him that forms the contract. And what that contract says is we aren't waiving any of our rights. We're not removing any of the contract terms. Right. And your payment will be fine. Your position, though, is that basically there's no difference to a potential lender whether somebody is completely failing to make any payments and is making timely payments under a TPP. Is that right? No, that's not our position. It's not? No. Our position under the facts of this case, when we're talking about reporting a year later, that do reflect, when you look at the reporting as a whole, do reflect that the modification was made. When you look at the dispute results, you can see that his prior payment was $2,950 and now it's $2,714. There's also been a balloon payment added to the end of the term. That was as a result of the modification. You can see that, as was true, he wasn't making payments under the original contract until August 2017 when the contract was signed. But he was making the payments under the TPP in the summer of 2017, correct? That is correct. And you don't think a lender would be interested in that? I think at the time they were being made, a lender very well may be interested in that. Well, we know that FM was looking back a year. A year. And that was the problem here, right? They did not believe that this reporting showed that he made timely payments in those months. Right. Because of the omission of that information. I understand that that may not be resolved as a matter of law, but it sure looks like at least an issue of fact under Pitman, Loesch, and Maleva. I think it may be an issue of fact as to damages, maybe. But the affiant in that declaration talks about 12 months of timely payments. There's no dispute that he didn't make 12 months of timely payments under the mortgage contract. He entered a separate agreement, this TPP, to modify the contract. The timeliness of those payments. And the report said nothing about that, right? In the report a year later? Yes. That's correct. There's no notation. The reports that are the subject of the lawsuit as opposed to the reports in 2017? Yes, that's correct. Okay. We don't know what Optum was reporting during the actual contemporaneous time frame. Okay. Was Mr. Chadoff ever notified to limit his dispute to 150 words? No. It's 100 words on the statute. 100 words, 100 words. Was he ever notified to do that or did he ever take it? Oh, yeah, 100 words. Because the statute says the consumer reporting agency may limit such statements to not more than 100 words if it provides the consumer with assistance in writing a clear summary of the dispute. That's right. So it's the consumer agency that, at least the way the statute reads it, is the consumer agency is the one that at least has some responsibility for cutting the statement down from an unruly letter to 100 words, which makes sense, right? Right. Well, it envisions sort of a cooperative discussion with the consumer of what do you want this to say. Right. And was Mr. Chadoff ever asked that question when he sent the July letter in? Both times he sent letters in, the dispute response he got back said, if you want a statement of dispute added, we will add it for you. Let us know what you want us to say. It says it very clearly. So on this question about statement of dispute in 1681I, we have the Cortez case from the Third Circuit. Do we have other circuit authority that gives us much guidance on this? There isn't, and frankly, when you read Cortez, it doesn't provide much guidance either. Cortez does not say that a further letter dispute is a statement of dispute. Cortez specifically said we agree with Guiman from the Ninth Circuit. It generally says you have to file a statement. Guiman did not go into the facts a lot, but what Cortez says is we have an extraordinary case where a CRA didn't reinvestigate at all, kept telling a consumer in that case that this information they were disputing isn't part of their file. They said under these extraordinary facts, we don't have a problem finding that there could be liability for not adding a statement of dispute because when you look at the language of 1681IB, it entails adding that statement of dispute after you get the first dispute results. The consumer in Cortez didn't get dispute results because the CRA didn't process the dispute, and Cortez's decision clearly recognizes that it's, frankly, an extraordinary decision. What do we make of the word filed in the statute? That 1681IC says whenever a statement of dispute is filed, it's different language than is used in the other provisions. Right. The other provisions envision notice of a dispute. Right. That's the general liability under 1681IA. What does filed mean? I think it means telling the CRA I would like this added to my credit file so that it goes out in consumer reports in the future. Filing it with the CRA? Yes. And just, although it's not really in the record here, there are multiple avenues. You can do it online. You can do it via phone call. You can add it in a letter. It happens all the time. So, Mr. Hall, when in response to the first letter from the plaintiff from May of 2018, Experian sends out one of these computerized notices, an ACDB, right, to Auckland, right? So, what question does Experian ask? They ask Auckland to look at all the dispute correspondence. And just to back up one step, the use of the term automated is a little bit misleading. There are people involved on both sides. Okay. Glad to hear that. It's email, essentially, that goes back. They send all of Mr. Chadoff's dispute correspondence so that Auckland knows exactly what he is saying, his letter, and all the attachments. And we know very clearly that Auckland disagrees with Mr. Chadoff. Not only do we have the response to Experian's ACDB that verifies the reporting, it says review the attached documents, review the dispute, and verify accordingly. And they do. What are they asked to verify? They're asked to verify everything. They're asked to read both case law and regulatory guidance. There used to be coding. Now it says attach documents so that the furnisher, Auckland in this case, can fully understand what the dispute is. They have their own obligation under the statute now to read it themselves, investigate, and report back accurately, including issues of liability. And, obviously, there are some legal questions that may be involved in that. But we also have this case law that's been emerging concerning disclosure of TPP arrangements as to distinguish somebody who's making those payments from someone who's not making any payments at all. So Auckland doesn't get it or what? No, I think Auckland, and you look at their May 2018 letter they sent directly to Mr. Chadoff when he contacted them, says more or less that was a year ago. We did report that. The loan has been modified. We're reporting accordingly. We told you, and this is where it's really important that you look at the actual terms that they offered Mr. Chadoff. We told you we are not accepting these payments as full satisfaction of your current obligation. We're applying them in arrears, and we will continue to report you delinquent. That was the contractual offer that he accepted. And what they said in their May 2018 letter that's in the record is that's what we told you, and that's what we did. Our reporting is accurate. And that sort of takes the air out of – Well, the question is whether it's complete, right? It's what they said was factually correct. Right. And the question is whether the absence, the failure to provide additional information is misleading. Right. Right? That is the issue that plaintiff is trying to raise on appeal, yes, sir. Well, and it's also self-evident in his summary judgment brief. I think it is – He's relying on Pittman, right? He is relying on Pittman in his summary judgment. What more does he need to do? Well, I think for an I claim, you needed to say in your actual dispute that triggers the duty, this is incomplete reporting. At least reflect that I have this obligation. You have to say something about the obligation. It can't be I disputed this account. Everything about it is fair game for a complaint. When you look at what he says in his complaint, he says, I was irate that they were reporting me as late. Not that they were reporting I was irate because it was incomplete. When you look at his dispute letters, he doesn't say this is incomplete. He says it should be reporting timely payments. It's misleading. It's not reporting everything that should be reported. That's not what he says in his letters. But you argue in your brief that it makes a difference that his theory is not in his complaint. It does make a difference. We've said time and time again, theories don't have to be quite in complaints. But you have to give at least enough to provide notice to survive a Rule 12 motion. I mean, if it was just it's inaccurate, that's a legal conclusion that wouldn't survive a Rule 12 challenge. I agree that, obviously, he doesn't have to plead the entire exhaustive thing. He can plead in the alternative. That's not my dispute. The issue is, can you, for the first time in a response brief and then on appeal, veer from your dispute letters that triggered it and your updated complaint? That's a different kind of issue after summary judgment than just saying, I'm amending to report the facts. To me, that's hair splitting. Those are the kinds of distinctions that have emerged during litigation. If he had amended his complaint prior to that, I wouldn't argue with you that the facts supported that. That's a level. If I'm not selling you on that, I'll move on. That's a level of pleading. Sure. So I do want to address the reasonableness question here before I move on. Even if you disagreed with us on accuracy or thought there was something that more could have been added, the issue of reasonableness is very clear in the case law here. Going back to 1994 in this court's decision in Henson, said only when the consumer has provided notice that the creditor is unreliable and a dispute letter that simply says, I disagree with them. Here are some documents. And we know what Ockwin thinks the reporting is correct. There's no reason to think that doing something more or why a phone call versus the industry standard process for communicating. These banks are oftentimes big, have multiple departments. Why calling Ockwin would end up with a different result than sending all of his letters, including the contract they had, to Ockwin and say, he says this isn't right. Verify it all and report the accurate information. So is that part of the obligation in establishing reasonableness to prove it would have made a difference? I do believe he has to prove causation, yes. He has to prove Childress says this in this circuit that there is a burden on the plaintiff to propose an alternative that would be reasonable. There is a burden. A phone call doesn't seem like it would make a difference. We know what Ockwin would say. And here we're talking about plaintiff thinks it was his intent in entering his agreement that on his credit report for these months he was making these payments, it would report those payments. Ockwin disagrees. They said we would not do that and we don't think that's what our contract says. And fundamentally, what plaintiff's case is about is asking Experian to step into that relationship and decide what's right or at least say there's something more to be done. Why isn't it a jury issue for a jury to decide whether what Experian drew from the information it had was reasonable? If there's no problem here with the procedure, you follow the proper procedure, but I think what the plaintiff is saying is you had all the information you needed to make that determination and you didn't do it and that's unreasonable. Why isn't that a jury question? I think if those were the facts of this case, if they had the information that plaintiff provided actually conflicted with the information Ockwin was, it probably would be enough. We wouldn't be here. So it's a question of what's in the letters. It's a question of when you look at the actual documentation provided, it doesn't conflict with what Ockwin was reporting. Ockwin was reporting that the loan had been modified. Ockwin was reporting the reduced payments and that he'd been making timely payments since the loan was legally modified in August 2017. There's no conflict there. The conflict has to do with the summer of 2017, right? Right. And the omission of the timely payments in the summer of 2017 under the TPP, right? That's what he wanted disclosed. He thinks that would have let him buy his house earlier and at lower interest rates, right? Right, on a separate agreement. That's right. Okay. Anything further? No, I'm out of time, Ron. All right. Thank you very much, Mr. Hall. We have two minutes. Mr. Zemel. Your Honor, just some quick points. The dispute letter here clearly articulates in both of the dispute letters that the information is inaccurate, false, and misleading, specifically because it is making him appear to his lenders as though he did not make any payments throughout 2017 since the agreement. That's sufficient. What does the consumer need to do to trigger his obligations? The consumer doesn't need to be an FCRA attorney. That's an unreasonable ask. With regard to the speculation of what would have happened if Experian actually called AQUIN instead of just submitted the ACDD process, that obligation can't be imposed on consumer plaintiffs because that would require, at a deposition, we're going to ask the Experian representative, if you would have called AQUIN, would that have resulted in something else? The answer is always going to be no. It would have been the same thing. There would never be any FCRA case or any FCRA liability against a credit reporting agency. The FCRA is a consumer-friendly statute. It must be interpreted liberally in favor of the consumer. That will also go to the phrase filed that Your Honor has asked quite a bit about. A consumer can't know what filed means if it's anything more formal than the submission of a letter or a phone call or any typical way to inform Experian of the dispute. Lastly, with regard to Experian's statement that, in response to the May dispute, Experian advised Mr. Chadoff he could put in a statement of 100 words. The consumer isn't put in a position to know, this means that my next dispute must list 100 words, otherwise Experian won't notate the dispute. That also cannot be the obligations imposed on the consumer, and Experian can't limit the statute to require that of the consumer and require that understanding. For these reasons, the district court should be reversed. Okay. Our thanks to both counsel. The case will be taken under advisement.